**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Mario M. Choi (SBN 243409)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*
*mchoi@kaplanfox.com*

*Counsel for Plaintiffs*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE YOUNG and ROXANE TIERNEY, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>          v.<br><br>L'ORÉAL USA, INC.,<br><br>                              Defendant. | Case No. 3:20-cv-00944<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>**(1)  California's Consumer Legal Remedies Act, Civ. Code §§ 1750, et seq.;**<br><br>**(2)  California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq.;**<br><br>**(3)  California's Song-Beverly Consumer Warranty Act, Civ. Code §§ 1790, et seq.;**<br><br>**(4)  Breach of Implied Warranty of Merchantability;**<br><br>**(5)   Unjust Enrichment; and**<br><br>**(6)   Declaratory Relief**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.     Plaintiffs Renee Young and Roxanne Tierney ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant L'Oréal USA, Inc. ("Defendant" or "L'Oréal"), demanding a trial by jury.  Plaintiffs make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves which are based on personal knowledge.  On behalf of themselves and the class or subclasses they seek to represent, Plaintiffs allege as follows:

**NATURE OF THE ACTION**

> "I really like this product, but when I get to the 1/2 way mark, I cant get it to come out. I have cleaned the dispenser but still i cant get anymore. I thought I could unscrew the top, but it doesnt work that way. I enjoy wearing this foundation, but cant afford to lose 1/2 a bottle everytime. do you have any suggestions?"

*L'Oréal Visible Lift; 01/26/2011 L'Oréal website [sic].*[1]

2.     This is a consumer class action on behalf of consumers seeking redress for L'Oréal's deceptive practices in marketing and selling to consumers liquid cosmetic products in defective manual pumping bottles that fail to dispense significant, material amounts of the liquid products ("Liquid Cosmetic Products")[2] in violation of state consumer protection and warranty laws.

3.     L'Oréal is a manufacturer and seller of cosmetic products including the Liquid Cosmetic Products at issue in this action. Defendant's Liquid Cosmetic Products are offered for sale to consumers throughout the United States through various large retailers and pharmacies including but not limited to Sephora, Walgreens, Wal-Mart, Target, Ulta, Rite-Aid, and CVS. They are also offered by these retailers on their e-commerce websites and by other online retailers such as Amazon.com, Drugstore.com, and Beauty.com.

---

[1] Customer comments quoted throughout this Class Action Complaint ("Complaint") have not been edited for spelling, punctuation or grammar.

[2] Including without limitation "Visible Lift Serum Absolute," "Age Perfect Eye Renewal Eye Cream," and "Revitalift Bright Reveal Brightening Day Moisturizer," which are marketed under the "L'Oréal" brand, and "Superstay Better Skin Skin-Transforming Foundation," which is marketed under L'Oréal's "Maybelline" brand.

4.      L'Oréal's Liquid Cosmetic Products are generally sold in containers containing one fluid ounce or less of product.  Defendant packages and sells these products in containers made of glass that are sealed or otherwise designed to prevent consumers from opening them.  L'Oréal further designed the products to be dispensed through manual pumps inserted into the sealed containers.

5.      The Liquid Cosmetic Products utilize substantially similar pumps for substantially similar liquid cosmetics to dispense product.  All of L'Oréal's defective pumps suffer from the same defect of failing to dispense a significant and material amount of product, and L'Oréal's misleading acts or omissions that give rise to Plaintiffs' consumer fraud and warranty claims are substantially similar with respect to all of the products at issue—particularly because Plaintiffs' claims focus on the functionality of the Liquid Cosmetic Products' defective packaging as opposed to the efficacy of the contents.

6.      The Liquid Cosmetic Products violate California law because while the containers accurately state the total amount of product contained therein, Defendant fails to disclose to consumers that the pumps are defective for their intended purpose and that they will not be able to access or use a large percentage—*in some cases more than half*—of the product purchased.  This is because the pumps used to dispense these Liquid Cosmetic Products are defective and cannot adequately and reasonably dispense viscous liquids, failing to dispense a quarter of the Liquid Cosmetic Products, and sometimes 50% or more.

7.      To make matters worse, the containers are often glass bottles, sealed shut and are designed to *prevent* consumers from opening them, thereby thwarting consumers' access to the trapped product by any reasonable and safe means.  Because some of the containers are made with opaque materials, or the viscous liquids frequently stick to the sides of the containers, it is also difficult for consumers to know exactly how much, if any, Liquid Cosmetic Product remains trapped in the containers.  This is further exacerbated by the inherent weight of a small, yet relatively heavy, glass bottle, which misleadingly leads consumers to believe that the weight of any stranded product is attributable instead to the bottle weight itself, and not to any product leftover.

8.      As L'Oréal's products are made with glass bottles and are designed not to be opened, a reasonable consumer would not be expected to do more than perfunctorily attempt to open the bottle because doing so more aggressively (such as with a saw or knife) could likely be dangerous, thereby exacerbating the defects in the pumps themselves.

9.      Results from Plaintiffs' independent laboratory testing of the products at issue, which utilized standard laboratory practices for measuring the volume of viscous liquids, confirm that L'Oréal's defective Liquid Cosmetic Product pumps only dispense between as little as 43 percent to 81 percent of the container's advertised contents.

10.     This low dispensation rate deceives and damages consumers, who typically spend approximately $15 for the products, meaning that consumers may lose on the average approximately $7 *on each purchase* because of L'Oréal's defective and misleading packaging.

11.     To compound matters, viscous liquid like the makeup products at issue can be more easily and completely dispensed from containers that contain removable pumps.  In addition to threaded, removable screw-top pumps, airless pumps are utilized by many other cosmetic manufacturers to dispense viscous liquid cosmetic products similar to that of L'Oréal's products.  Moreover, L'Oréal itself uses these more efficient packaging types with other of its products, so it obviously is familiar with their advantages.

12.     Numerous consumers have complained directly to L'Oréal about (i) their inability to access the Liquid Cosmetic Product due to the defective pump design, (ii) their frustration that the containers are sealed which prohibits them from accessing stranded product the pumps won't dispense, (iii) their unsuccessful attempts to remove the pumps, and (iv) the unsuccessful attempts they have made to otherwise access the trapped product.  In fact, some consumers go to potentially dangerous lengths to attempt to access the trapped product.  For example, according to online complaints, consumers have tried to saw off the top of pumps, even though the containers are glass.  Others have reported using pliers or other tools not designed for such efforts.

13.     Many of the consumer complaints are posted on L'Oréal's own website, dating at least as far back as 2010.  L'Oréal often responds directly to these specific complaints, thanking

consumers for sharing their feedback and assuring them their comments will be "shared with our management team."

14.     As demonstrated by Plaintiffs' experiences, a national consumer survey, and the widespread complaints on this issue, no reasonable consumer would expect that the manual pump would be defective and cease dispensing product while a significant unused portion remains stranded in the bottle that is sealed and inaccessible by any safe means.  And, reasonable consumers expect that a package will be effectively, safely, and properly designed so consumers can best utilize and consume the entirety of the product (except perhaps for *de minimis* trace amounts).  The deceptive manner in which these Liquid Cosmetic Products are marketed and sold further precludes consumers from making useful and accurate value comparisons between these Liquid Cosmetic Products and other similar products on the market.

15.     L'Oréal nevertheless continues to sell these Liquid Cosmetic Products in sealed glass containers, sometimes coated or opaque, with non-removable and ineffective pumps in order to generate greater revenue and sales.  In addition to depriving consumers of the full value of the product they have purchased, the deceptive and faulty design of these containers causes some consumers to believe that they have used all of the product and purchase it more frequently than they otherwise would have if the full quantity of product had been dispensed.  This results in greater sales and increased profits for L'Oréal as consumers purchase more Liquid Cosmetic Products more frequently.  Additionally, L'Oréal receives payment for and profits from the sale of products that the reasonable consumer can never fully use, and is unjustly enriched in that regard.

16.     Had Plaintiffs known that a large percentage—***sometimes more than half***—of the Liquid Cosmetic Products they purchased from L'Oréal could not be reasonably accessed from the containers in which they were sold, and had Plaintiffs known there was no other reasonable means of accessing the trapped product, Plaintiffs would not have purchased Defendant's Liquid Cosmetic Products and/or would have paid less/would not have paid the price premium demanded by Defendant, or otherwise acted differently.

17.     Plaintiffs assert putative class action claims on behalf of themselves and all other consumers who purchased Defendant's Liquid Cosmetic Products.  They seek damages, restitution, and injunctive relief.

## PARTIES

18.     Plaintiff Renee Young is a citizen of California who resides in Windsor, California, and is over the age of 18.

19.     Plaintiff Roxane Tierney is a resident of California who resides in Apple Valley, California, and is over the age of 18.

20.     Defendant L'Oréal is a Delaware corporation with its principal place of business at 575 Fifth Ave, New York, New York 10017.  It is a subsidiary of the French cosmetics giant L'Oréal S.A., the world's largest cosmetics company.

21.     L'Oréal is engaged in the manufacturing, packaging, advertising, and distributing of many consumer products, including the Liquid Cosmetic Products at issue here, throughout the United States.  In addition to manufacturing and distributing products using the "L'Oréal" brand, L'Oréal also manufactures and distributes products using the "Maybelline" brand, including the Liquid Cosmetic Products at issue here, throughout the United States.

## JURISDICTION AND VENUE

22.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The aggregate claims of all members of the proposed class and subclasses are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members.  Plaintiffs, as well as members of the proposed class, are citizens of a state different from Defendant.

23.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where L'Oréal distributed, marketed, advertised, and sold the various Liquid Cosmetic Products at issue throughout California, which are the subject of the present complaint.  Finally, venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because Plaintiff Young and

a substantial portion of putative class members are residents of this District and a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

24.     This Court has personal jurisdiction over L'Oréal because it is authorized to do business and does conduct business in California, has specifically marketed, advertised, and made substantial sales in California, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

**INTRADISTRICT ASSIGNMENT**

25.     Pursuant to Civil Local Rule 3-2(c), an intradistrict assignment to the San Francisco/Oakland Division is appropriate because a substantial part of the events or omissions which give rise to the claims asserted herein occurred in this Division, including that Plaintiff Young resides in and made the purchase at issue in Sonoma County.

**FACTUAL ALLEGATIONS**

A.     <u>Products At Issue</u>

26.     There are at least four products at issue in this case manufactured and marketed by L'Oréal during the class period, which are sold in drug stores, cosmetic stores, and other retail outlets across the United States, and internationally.

27.     Two of the products are liquid foundations, "Visible Lift Serum Absolute," marketed under the L'Oréal brand, and "Superstay Better Skin Skin-Transforming Foundation," marketed under the Maybelline brand.  A version of each of the products is pictured here:



28.  The two other products at issue are "Age Perfect Eye Renewal Eye Cream" and "Revitalift Bright Reveal Brightening Day Moisturizer," both of which are marketed under the L'Oréal brand and are pictured here:





29.     The products are sealed in glass containers.  The liquids are dispensed through a manual pump which cannot be screwed off or otherwise removed.

**B.      History Of The Problem: Consumer Complaints**

30.     L'Oréal has known about the problems with its defective pumps for years. Numerous consumers have lodged complaints with L'Oréal dating back at least as far as ***ten years ago***.  L'Oréal has sometimes acknowledged these complaints and has even responded to them, thanking consumers for their thoughts and promising to share customer feedback with management and others within the company.

31.     Below is a mere sampling of online consumer complaints, most of which were directly received by L'Oréal on its websites, involving the Liquid Cosmetic Products:

> **L'Oréal Visible Lift Serum Absolute Foundation**
> a.      "I have been buying Loreal makeup for many years and I don't have any complaints about the make up-I actually prefer it, The complaint I have is with the new bottle for Visible Lift. You can NOT take the top off! When the bottle is close to empty and the makeup is just low enough for the pump not to reach-you cant get anymore makeup out. If I am going to have to pay $$$ for makeup I would like to be able to use it all. = (" 1MadBuyer from San Antonio, TX, posted on Defendant's website.
>
> b.      "This is a fabulous foundation, but all of a sudden - the pump stops working!  How ridiculous. I'd transfer the foundation to an airless pump, but the foundation is way to thick to get it out of the bottle. I've read that this happens with this foundation, but just thought .. Oh, that person got a bad one. Um, nooooooo - LOREAL - FIX THE FOUNDATION PUMP!" MonicaP from San Diego, posted on Defendant's website.
>
> c.      "Love the foundation; dislike the pump. I'd give this five stars for coverage and texture, but I'll knock it down to four for consistently having to wrench off the pump at the 25% level and dig out the remainder with cotton swabs, making a mess in the process. Seriously, L'Oréal, if you can produce other products in bottles that don't waste so much product, why can't you fix this one? We've been begging for years; help us out!" Almost57 from Sacramento, CA, posted on Defendant's website.
>
> d.      "I bought the new Loreal Visible Lift Foundation and loved it until I got 2/3 through the bottle and the pump top stopped working. Now I cannot access the remaining makeup from the bottle and the cap is not a screw top to [sic] it's impossible to get foundation out of the bottle even though there's a lot left. It's a very

poor design. I liked the idea of the pump until it stopped working. I won't buy the product again with this top. . . ." catessman posted on Complaints Board website.

e.     "Bottle is fitted with a pump dispenser that does not pump anything out when it gets low. Cap does not skrew off to allow you to get to it that way. So, for the amount this costs I expect to be able to use it ALL! Not three quarters of it." madesjarlais posted on MeasuredUp website.

f.     "Love product.....but 1/3 of it won't pump out. Manufacturer needs to redesign pump so it will actually pump out. Bottle is designed where the top won't come off. If you want to actually use all the product that you paid for, you have to pry the top off. A lot of people just throw it away and buy more which makes more profit for L'Oréal. Refuse to buy this product until pump actually works." Ms. Urban posted on Amazon website.

g.     "This is a great makeup but the bottle is terrible!! I have bought 2 and I will try one more but if the pump isn't better I will look for a new brand. I've lost half of each of the first ones and can't afford to pay the price to toss it in the garbage." Trudeeblue posted on Defendant's website

h.     "I really like this product, but when I get to the 1/2 way mark, I cant get it to come out. I have cleaned the dispenser but still i cant get anymore. I thought I could unscrew the top, but it doesnt work that way. I enjoy wearing this foundation, but cant afford to lose 1/2 a bottle everytime. do you have any suggestions?" Anonymous posted on Defendant's website.

**Maybelline Super Stay Better Skin Foundation**

a.     "GOOD, BUT NEEDS BETTER PACKAGING. I like this foundation, but it needs a better packaging. I'm the type to finish my things til the last drop and maybe because the foundation is on the thicker side, you can't really see when the foundation is about to be finished, and to top it off, extremely hard to remove the pump." suheid from Long Beach, CA posted on Defendant's Maybelline website.

b.     "the pump stopped working after the third day....threw it out." Donna M. Coriano posted on Amazon's website.

**L'Oréal Revitalift Bright Reveal Brightening Day Moisturizer**

a.     "Bottle broken. :(. I only was able to use the Bright Reveal moisturizer a few times before the pump stopped working. But the few times that I did it was nice. I noticed it was slightly pearlized which is what I'm guessing is supposed to give your skin some radiance. I don't plan on repurchasing this lotion, disappointed that the bottle broke so soon and am glad I didn't spend my money on it

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

or it would have been returned. Seems like a good basic daytime lotion. I have dry skin and h to use had to use a lot to make my skin feel comfortable. Also I prefer my daytime lotion to have a higher SPF. Won't purchase in the future, but I did LOVE some of the other products in this line." Suzanne posted on Defendant's website.

b.      "Great formula; needs better packaging. I've pruchased this twice so far and really like the product. It smells nice, absorbs fast, and protects from the sun well. My only complaint is the package: when the pump stops pumping, there is still a lot of product remaining in the bottle and it's very hard to get the rest out. This seems wasteful, and I want to use every bit of what I've purchased. A wider bottle neck or a squeezable tube would make it easier to completely empty the package and use all of the product." SDCA posted on Defendant's website.

### L'Oréal Age Perfect Eye Renewal Eye Cream

a.      "The cream in this product is nice but I would never buy it again because the pump is faulty. It stops working at about half full. So you waste 50% of product. I want a refund! do not buy this." Lauraindc posted on Defendant's website.

b.      "The bottle needs to be redesigned! This is the 2nd time I have bought this product. And yet again I cannot get the bottle 1/3 of the product to dispense. The pump stops working. I have had the bottle turned upside down for 2 days and the lotion will not drop. I will not buy this product again - you need to change the design." Sue952 from Surrey, BC, Canada, posted on Defendant's website.

32.    Given the multitude of complaints, L'Oréal is undoubtedly aware of the defective closed pump design.  Indeed, L'Oréal sometimes specifically responds to complaints on its own website:

a.      Complaint from "MiamimomFort Lauderdale, FL" and response from L'Oréal:

**Posted**: 07/18/2014 Reviewing: Natural Buff

Love the product Hate the pump- can't get last 1/4 out of bottle Bought 3 bottles - same problem Loved the previous bottle with brush- bring it back Moved on to another brand because of this

Response from L'Oréal Paris USA



Customer Care, L'Oréal Paris USA 07/21/2014

1
2
3

Thank you for taking the time to share your feedback with us. We are always looking for ways to improve our products and services. Your comments will be passed along to others in the company. In the future you may want to try our new product Visible Lift Blur Foundation: http://bit.ly/1k8v3qI

4

b.      Complaint from "Vandeven mConroe, TX" and response from L'Oréal:

5

**Posted**: 09/01/2014 Reviewing: Creamy Natural

6
7
8
9

Great product but you can only use 65% or 75% of the product. The rest is wasted as the pump will not distribute the material that remains. I guess Loreal can sell more product that way but it's frustrating to pay top dollar for a good product only to be able to access a portion of what you bought. Bottom line, good product, poorly designed dispenser.

10

Response from L'Oréal Paris USA

11
12

      Customer Care, L'Oréal Paris USA 09/08/2014

13
14

Thank you for sharing your thoughts with us. We are always looking for ways to improve our products and services. Your comments will be shared with our management team.

15
16

**C.      Other Packaging Options**

17

33.      There is no equitable justification for L'Oréal's products to suffer from these defects

18

or for L'Oréal to deceive and mislead consumers.  Other liquid cosmetic products (including other

19

products marketed and sold by L'Oréal itself) similar to those at issue here are marketed and sold

20

in containers that either (a) have threaded, screw-off lids, (b) use removable (not closed) pumps,

21

(c) use airless pumps, or (d) utilize squeeze tubes—all of which allow most, if not all, of the liquid

22

cosmetic product to be dispensed.  Regarding airless pumps, they typically dispense at least 99%

23

of liquid cosmetics similar to L'Oréal's Liquid Cosmetic Products.  Many cosmetic manufacturers

24

(including L'Oréal) use airless pumps to dispense liquid foundations and other liquid cosmetic

25

products.   For example, Arbonne uses an airless pump to dispense its "Perfecting Liquid

26

Foundation," a similar product:

27
28

1
2
3
4
5
6
7
8
9



10        34.    The use of airless pumps is in no way limited to expensive cosmetic products.  One

11  of the least expensive lines of cosmetics sold at Target stores, e.l.f. Cosmetics, also makes use of

12  airless pumps to dispense its primer and foundation—both of which are sold for approximately

13  $6.00 each:

14
15
16
17
18
19
20
21
22
23
24



25  **D.     Laboratory Testing**

26        35.    Independent laboratory Exponent tested the dispensing rates of L'Oréal's products

27  at issue, consistent with standard laboratory practices for measuring the volume of viscous liquids.

28

Exponent's testing reflects and confirms what consumers have already reported: L'Oréal's closed pump is defective for its intended purpose and results in significant amounts of the Liquid Cosmetic Products remaining in their containers and unavailable for use by the consumer who paid for it. For some products, the pump is only capable of dispensing 43% of the product, ***stranding well over half of the product in the container***.

36.     The results from the laboratory testing for the Liquid Cosmetic Products at issue were as follows:

| PRODUCT | PERCENTAGE OF LABELED VOLUME ACTUALLY DISPENSED |
|---|---|
| L'Oréal Age Perfect Eye Renewal Eye Cream | 43% |
| L'Oréal Revitalift Bright Reveal Brightening Day Moisturizer | 62% |
| Maybelline Superstay Better Skin Skin-Transforming Foundation | 77% |
| L'Oréal Visible Lift Serum Absolute | 81% |

**E.     Consumer Survey**

37.     Plaintiffs also commissioned a national consumer survey to assess consumers' reasonable expectations regarding the amount of liquid cosmetic product that should be dispensed from closed pump containers for liquid foundations and other products similar to the Liquid Cosmetic Products. Of the more than 750 consumers who were surveyed, 74% expected to receive and use the full labeled amount on the bottle.

38.     In addition, consumers were told to assume that only 70% of a liquid cosmetic could be dispensed from a closed pump container and were asked to provide comments in response to that proposition. Nearly three-quarters (72%) of the comments were negative or extremely negative. The hundreds of negative comments included words such as "unethical," "waste," "unfair," "rip-off," "sucks" and "cheat."

39.     Given that L'Oréal is aware, yet conceals from unsuspecting consumers, that its Liquid Cosmetic Products are contained in closed, defective pumps and that the consumer will be

unable to access and use significant, material amounts of the product they purchased, L'Oréal has run afoul of California's consumer protection and warranty laws.

<strong>PLAINTIFFS' EXPERIENCES</strong>

**A.**   <u>**Plaintiff Renee Young**</u>

40.     On or about June 2017, Plaintiff Young purchased L'Oréal Age Perfect Eye Renewal Eye Cream and paid approximately $18.00 for the product at the CVS store in Windsor, California.

41.     Although she attempted to do so, Young was unable to use all of the eye cream purchased because it could not be completely dispensed from its defective container and Young was unable to use any other reasonable means to access the remaining product for use. A significant amount of product was stranded.

42.     Because of her experience with the defective pump and stranded product, Young did not purchase the L'Oréal eye cream again.

43.     On or about January 2018, Plaintiff Young purchased L'Oréal Visible Lift Serum Absolute Foundation and paid approximately $14.00 for the product at the Walmart store in Windsor, California.

44.     Although she attempted to do so, Young was unable to use all of the foundation purchased because it could not be completely dispensed from its defective container and Young was unable to use any other reasonable means to access the remaining product for use. A significant amount of product was stranded.

45.     Because of her experience with the defective pump and stranded product, Young did not purchase the L'Oréal foundation again.

**B.**   <u>**Plaintiff Roxane Tierney**</u>

46.     On or about March 2017, Plaintiff Tierney purchased L'Oreal Visible Lift Serum Absolute Foundation and paid approximately $15.00 for the product at a retail store in Apple Valley, California. At around the same time, Tierney purchased Maybelline Superstay Better Skin Skin-Transforming Foundation and paid approximately $15.00 for the product at a retail store in Apple Valley.

47.     Although she attempted to do so, Tierney was unable to use all of the foundation purchased from the two products because the foundations could not be completely dispensed from the containers and Tierney was unable to use any other reasonable means to access the remaining product for use. A significant amount of product was stranded in both containers.

48.     Because of her experience with the stranded product, Tierney did not purchase the L'Oreal foundation or the Maybelline foundation again.

49.     Had Plaintiffs known that the pumps were defective and that they would not be able to use a material proportion of the Liquid Cosmetic Products they purchased because the product could not be dispensed from the containers in which they were sold in, and had Plaintiffs known there was no other reasonable means of accessing the trapped product, Plaintiffs would not have purchased Defendant's Liquid Cosmetic Products and/or would have paid less/would not have paid the price premium demanded by Defendant, or otherwise acted differently.

**CLASS ACTION ALLEGATIONS**

50.     Plaintiffs bring claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class, as defined below.

> All persons who purchased one or more Liquid Cosmetic Products
> sold by Defendant in California. [3]

51.     Excluded from the Class are Defendant and its current employees, counsel for either party, as well as the Court and its personnel presiding over this action.

52.     This action has been brought and may properly be maintained as a class action against L'Oréal pursuant to the provisions of Federal Rule of Civil Procedure 23.

53.     **Numerosity**: The precise number of members of the proposed class is unknown to Plaintiffs at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable.  Defendant's Liquid Cosmetic Products have been and are sold throughout the United States through numerous retail outlets including Sephora, Wal-Mart, Target, Walgreens, Ulta, Rite-Aid, and CVS during the Class Period.  Defendant's Liquid

---

[3] The "Class Period" for each claim is provisionally intended to be the respective statute of limitations for each claim, with Plaintiffs reserving the right to invoke the equitable tolling doctrine based on the discovery rule or other bases as discovery and the case progresses.

Cosmetic Products also have been offered and are offered online by these retailers and by other online retailers such as Amazon.com, Drugstore.com and Beauty.com during the Class Period. Plaintiffs believe, based on information and belief and publicly available sales figures, that Class members number in the tens or hundreds of thousands.  Class members may be notified of the pendency of this action by published notice, sales records, or by other alternative means and may be identified through the sale and distribution records of L'Oréal and third-party retailers and vendors.

54.   **Commonality**: Numerous questions of law or fact are common to the claims of Plaintiffs and members of the proposed Class.  These common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to the following:

a.   Whether the Liquid Cosmetic Products marketed and sold by L'Oréal are deceptively marketed and sold in defective pumps that are unfit for dispensing viscous liquid cosmetics and/or are made, constructed, packaged, labeled, and filled so as to mislead, deceive, and defraud reasonable consumers including Plaintiffs and Class members.

b.   Whether the Liquid Cosmetic Products marketed and sold by Defendant are defectively designed and/or manufactured in a manner likely to deceive reasonable consumers including Plaintiffs and Class members.

c.   Whether the manner in which these Liquid Cosmetic Products are marketed and sold prohibits consumers, including Plaintiffs and Class members, from making useful and accurate value comparisons between Defendant's Liquid Cosmetic Products and other similar products on the market.

d.   Whether L'Oréal's conduct violates the relevant California consumer protection and warranty laws.

e.   Whether Plaintiffs and the other Class members were injured by L'Oréal's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief.

f.   Whether Plaintiffs and the other Class members are entitled to injunctive

relief.

55.     **Typicality**: The claims of the named Plaintiffs are typical of the claims of the proposed Class in that the named Plaintiffs purchased one or more of L'Oréal's Liquid Cosmetic Products during the Class Period in a typical consumer setting and sustained damages as a result of L'Oréal's wrongful conduct.

56.     **Adequate Representation**: Plaintiffs will fairly and adequately represent the interests of the Class in that they are typical consumers of Defendant's Liquid Cosmetic Products and have no conflicts with any other Class members.  Plaintiffs have retained competent counsel experienced in prosecuting complex class actions, and they will vigorously litigate this class action.

57.     **Predominance and Superiority**: There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy.  Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant.  Additionally, given the modest amount of damages sustained by any individual Class member, few, if any, proposed Class members could or would sustain the economic burden of pursuing individual remedies for L'Oréal's wrongful conduct.  Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court. This class action presents no material difficulties in management.

58.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which may produce incompatible standards of conduct for Defendant.

59.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed Class would create a risk of adjudications with respect to individual Class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

60.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as L'Oréal has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a whole.

61.     Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a Class action is superior to other available remedies for the fair and efficient adjudication of this controversy.  The amount of damages available to individual plaintiffs is insufficient to make litigation addressing L'Oréal's conduct economically feasible in the absence of the class action procedure.  Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

62.     Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because questions of law or fact common to the Class members may be certified and decided by this Court on a classwide basis.

### CLAIMS FOR RELIEF

### <u>COUNT I</u>

**Violations of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.**

63.     Plaintiffs hereby incorporate by reference the factual allegations contained herein.

64.     The California Consumer Legal Remedies Act ("CLRA"), Civil Code section 1750, *et seq.*, was designed and enacted to protect consumers from unfair and deceptive business practices.  To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code section 1770.

65.     The CLRA applies to L'Oréal's actions and conduct described herein because it extends to the transactions involving the sale of goods or services for personal, family, or household use within the meaning of Civil Code section 1761.

66.     At all relevant times, Plaintiffs and members of the Class were "consumers" as that term is defined in Civil Code section 1761(d).

67.     L'Oréal practices in connection with the marketing and sale of its Liquid Cosmetic Products violate the CLRA in at least (but not limited to) the following respects:

> a.     In violation of section 1770(a)(5), L'Oréal's Liquid Cosmetic Products knowingly misrepresented goods;
>
> b.     In violation of section 1770(a)(7), L'Oréal's Liquid Cosmetic Products were represented to be of a particular standard, quality, or grade, but were not; and
>
> c.     In violation of section 1770(a)(9), L'Oréal's knowingly advertised its Liquid Cosmetic Products with the intent not to sell the products as advertised.

68.     As set forth above, L'Oréal's Liquid Cosmetic Products are deceptive and misleading to reasonable consumers in violation of the CLRA because the pumps in which the Liquid Cosmetic Products are sold are defective and unfit for dispensing viscous cosmetics and fail to dispense material and significant quantities of the cosmetics while stranding undispensed cosmetics in sealed glass bottles that cannot be accessed using safe or reasonable means.  L'Oréal has known that its Liquid Cosmetic Products are contained in defective pumps but has chosen not to disclose that information to consumers in any aspect of its marketing or advertising for the products and has failed to adequately respond to consumers' complaints and concerns with compensation or refunds.  At all times L'Oréal has had exclusive knowledge of the pumps' defects and their unfitness for use with the Liquid Cosmetic Products because it designed, tested, marketed and sold the pumps knowing that they would not be able to dispense material amounts of product and that consumers would have no way of knowing about the defects until after the point of sale when they used the products at home.  L'Oréal also has exclusive knowledge and was put on notice of the pumps' defects through consumer complaints.    Through L'Oréal's uniform misrepresentations, concealment and suppression of material facts, L'Oréal engaged in misleading

and deceptive conduct that created a likelihood of confusion or misunderstanding on the part of Plaintiffs and Class members.

69.     L'Oréal's conduct described herein was undertaken in transactions intended to result in,  and which did result in, the purchase of its Liquid Cosmetic Products by consumers, which caused harm to Plaintiffs and Class members who would not have purchased (or paid as much for) its L'Oréal's products had they known the truth.  Plaintiffs were in fact injured by purchasing or overpaying for L'Oréal's products.

70.     The CLRA is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint.  *See* Cal. Civ. Code § 1752.

71.     In accordance with Civil Code section 1780, Plaintiffs and Class members seek injunctive and equitable relief for L'Oréal's violations of the CLRA necessary to bring it in compliance with the CLRA by, among other things, using non-defective pumps and or adequately disclosing that the defective pumps will not dispense material and significant portions of the Liquid Cosmetic Products prior to the point of purchase.

72.     In accordance with Civil Code section 1780, the Plaintiffs served a notice pursuant to Civil Code section 1782, via a certified letter, return receipt requested, requesting appropriate relief on or about February 6, 2020.  Should L'Oréal fail to respond to Plaintiffs' CLRA demand in a satisfactory manner, Plaintiffs will amend this Complaint to seek damages after the expiration of the notice period.

## **COUNT II**

**Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

**On Behalf of the California Class**

73.     Plaintiffs hereby incorporate by reference the factual allegations contained herein.

74.     L'Oréal has engaged in unfair competition within the meaning of California Business & Professions Code section 17200, *et seq.*, because L'Oréal's conduct is unlawful, unfair, and fraudulent as herein alleged.

75.     Plaintiffs, the members of the Class, and L'Oréal are a "person" or "persons," within the meaning of Section 17201 of the California Unfair Competition Law ("UCL").

76.     The UCL prohibits any unlawful, unfair, or fraudulent business practices or acts. L'Oréal's conduct, as alleged herein, constitutes an unlawful, unfair and fraudulent business practice that occurred in connection with the marketing, advertisement and sale of its products.  As set forth above, L'Oréal's Liquid Cosmetic Products are deceptive and misleading to reasonable consumers in violation of the UCL because the pumps in which the Liquid Cosmetic Products are sold are defective and unfit for dispensing viscous cosmetics and fail to dispense material and significant quantities of the cosmetics while stranding undispensed cosmetics in sealed glass bottles that cannot be accessed using safe or reasonable means.  L'Oréal has known that its Liquid Cosmetic Products are contained in defective pump containers but has chosen not to disclose that information to consumers in any aspect of its marketing or advertising for the products and has failed to adequately respond to their complaints and concerns with compensation or refunds. Through L'Oréal's uniform misrepresentations, concealment and suppression of material facts, L'Oréal engaged in misleading and deceptive conduct that created a likelihood of confusion or misunderstanding on the part of Plaintiffs and Class members.

77.     L'Oréal's misleading and deceptive misrepresentations and omissions, concealment and suppression of material fact, as described within, violated the UCL's unlawful, unfair, and fraudulent prongs.

78.     **Unlawful prong:**  L'Oréal's conduct, as described within, violated the UCL's unlawful prong because: (1) it violates the CLRA in connection with the sale of goods and services; (2) violates California's Sherman Act, Cal. Health and Safety Code section 109875, *et seq.*, because, among other things, L'Oréal has sold "cosmetics" that are misbranded in defective pumps that run afoul of the Sherman Act's prohibition on false and misleading labeling and use of containers that are "made, formed, or filled as to be misleading" (Cal. Health & Saf. Code §§ 111740, 111750); (3) it violates California Song-Beverly Consumer Warranty Act, Civ. Code §§ 1790, *et seq*. and the implied warranty of merchantability; and (4) has unlawfully and unjustly

enriched L'Oréal.  Plaintiffs and the Class have spent money purchasing L'Oréal's products they would not have otherwise purchased (or paid more for them).

79.  **Unfair prong:** L'Oréal's conduct, as described within, violated the UCL's unfair prong because its conduct violates established public policy intended to regulate the fair and ethical sale of goods and services to consumers as set forth in the CLRA, the Song-Beverly Act, and the Sherman Act, and because it is immoral, unethical, oppressive, or unscrupulous and has caused injuries to the Plaintiffs and the Class that outweigh any purported benefit.  At all times relevant herein, L'Oréal's conduct of misrepresenting and concealing material facts regarding its defective pumps from the Plaintiffs and consumers caused them injury by inducing them to purchase L'Oréal's products they would not have otherwise purchased (or pay more for them).  The utility of L'Oréal's conduct in misrepresenting and concealing material facts from the Plaintiffs and the Class is far outweighed by the gravity of harm to consumers who have now spent money they would not have otherwise spent and that has resulted in Defendant being unjustly enriched.

80.  **Fraudulent prong:** L'Oréal's conduct, as described within, violated the UCL's fraudulent prong by misrepresenting and concealing material information that caused, or would likely cause, Plaintiffs and the Class to be deceived into purchasing L'Oréal's Liquid Cosmetic Products they would not have otherwise purchased (or paid more for them).  At all times L'Oréal has had exclusive knowledge of the pumps' defects and their unfitness for use with the Liquid Cosmetic Products because it designed, tested, marketed and sold the pumps knowing that they would not be able to dispense material amounts of product and that consumers would have no way of knowing about the defects until after the point of sale when they used the products at home.  L'Oréal also has exclusive knowledge and was put on notice of the pumps' defects through consumer complaints.  Plaintiffs and the Class did, in fact, purchase L'Oréal's products they would not have otherwise purchased (or paid more for them) but for L'Oréal's fraudulent conduct misrepresenting and concealing material information about its defective pumps.  Plaintiffs and the Class have been harmed and sustained injury as a result of L'Oréal's fraudulent conduct in violation of the UCL as explained herein.

81.     Plaintiffs have standing to pursue this claim because they have been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.  Plaintiffs would not have purchased L'Oréal's products (or paid as much for them) had they known the truth, though they have an interest in purchasing such products in the future should L'Oréal use non-defective pumps.  As a direct result of L'Oréal's actions and omissions of material facts, Plaintiffs and Class members did not obtain the value of the products for which they paid; were unlawfully, unfairly, and fraudulently induced to make purchases that they otherwise would not have made; and lost their ability to make informed and reasoned purchasing decisions.

82.     The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint.  *See* Cal. Bus. & Prof. Code § 17205.

83.     As a direct and proximate cause of L'Oréal's conduct, which constitutes unlawful, unfair, and fraudulent business practices, as herein alleged, Plaintiffs and Class members have been damaged and suffered ascertainable losses measured by the cost of their L'Oréal purchases or some portion thereof, thereby entitling them to recover restitution and equitable relief, including disgorgement or ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

## COUNT III

**Violation of The Song-Beverly Consumer Warranty Act, Civ. Code §§ 1790 et seq.**

84.     Plaintiffs hereby incorporate by reference the factual allegations contained herein.

85.     L'Oréal violated the Song-Beverly Consumer Warranty Act by, among other things, violating the implied warranties of merchantability by knowingly selling Liquid Cosmetic Products in defective pumps that were unsuitable for use with viscous cosmetics because they could not adequately dispense the cosmetics contained within in violation of sections 1791.1 and 1791.2, and were therefore not fit for the ordinary purpose for which the goods were intended to be sold.

86.     L'Oréal's attempts to disclaim or limit the implied warranty of merchantability *vis-à-vis* consumers are unconscionable and unenforceable.    Specifically, L'Oréal's warranty limitations are unenforceable because L'Oréal knowingly sold defective products without informing consumers about the pump dispensing defect.  Moreover, Defendant was provided notice of these issues by numerous complaints lodged by consumers.

87.     Plaintiffs and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of L'Oréal's conduct described herein.

88.     Plaintiff and Class members have been harmed by L'Oréal's violations of the Song-Beverly Consumer Warranty Act and are entitled pursuant to Civil Code section 1794 to damages and other equitable relief necessary to bring L'Oréal into compliance with the Song-Beverly Consumer Warranty Act as well as an award of costs of litigation and reasonably attorneys' fees.

## COUNT IV

### Breach of the Implied Warranty of Merchantability

89.     Plaintiffs hereby incorporate by reference the factual allegations contained herein.

90.     L'Oréal impliedly warranted that the Liquid Cosmetic Products were of a merchantable quality under the Uniform Commercial Code, and California's common laws requiring consumer products be merchantable and fit for sale.

91.     L'Oréal breached the implied warranty of merchantability because the Liquid Cosmetic Products were not of a merchantable quality due to the pump dispenser defect and other conduct alleged above.

92.     If necessary, Plaintiffs' and Class members' interactions with L'Oréal suffice to create privity of contract between Plaintiffs and Class members, on the one hand, and Defendant, on the other hand.  However, privity of contract need not be established nor is it required because Plaintiffs and Class members are intended third-party beneficiaries of contracts (including implied warranties) between Defendant and the retailers who sell the Liquid Cosmetic Products.  L'Oréal's warranties were designed for the benefit of consumers who purchased Liquid Cosmetic Products.

93.     L'Oréal's attempts to disclaim or limit the implied warranty of merchantability *vis-à-vis* consumers are unconscionable and unenforceable.   Specifically, L'Oréal's warranty limitations are unenforceable because L'Oréal knowingly sold defective products without informing consumers about the pump dispensing defect.  Moreover, Defendant was provided notice of these issues by numerous complaints lodged by consumers.

94.     Plaintiffs and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of L'Oréal's conduct described herein.

95.     As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members were injured and are entitled to damages.  As a result of L'Oréal's breach of warranties, Class members have suffered damages because they have purchased Liquid Cosmetic Products they otherwise would not have purchased and/or would have paid less for, or otherwise acted differently. Plaintiffs and Class members are entitled to receive damages from Defendant in an amount to be determined at trial.

## COUNT V

### Unjust Enrichment

96.     Plaintiffs hereby incorporate by reference the factual allegations contained herein.

97.     By its wrongful acts and omissions described herein, L'Oréal has obtained a benefit by unduly taking advantage of Plaintiffs and Class members.

98.     L'Oréal, prior to and at the time Plaintiffs and the members of the Class decided to purchase the Liquid Cosmetic Products, knew and had knowledge and information that the products' packaging suffered from defects.

99.     L'Oréal was aware or should have been aware that reasonable consumers would have wanted to know the facts pertaining to the products' pump dispenser defect before deciding whether or not to purchase the Liquid Cosmetic Products.  L'Oréal was also aware that if the products' packaging defect was disclosed it would negatively affect the demand class members had to purchase the Liquid Cosmetic Products.

100.    L'Oréal failed to disclose facts pertaining to the products' packaging defect before Plaintiffs and Class members made their decisions to purchase the Liquid Cosmetic Products. Instead, Defendant suppressed and concealed information related to the products' packaging defect. By concealing and suppressing that information, L'Oréal denied consumers in the Class the ability to make a rational and informed purchasing decision as to the purchase of the Liquid Cosmetic Products and took undue advantage of Plaintiffs and Class members.

101.    L'Oréal was unjustly enriched at the expense of Plaintiffs and Class members. L'Oréal received profits, benefits, and compensation, in part, at the expense of Plaintiffs and Class members who purchased the Liquid Cosmetic Products.  By contrast, Plaintiffs and Class members did not receive the benefit of their bargain because they paid for products they could not reasonably consume due to L'Oréal's defective pumps.

102.    Since L'Oréal's profits, benefits, and other compensation were obtained by improper means, L'Oréal is not legally or equitably entitled to retain any of the benefits, compensation or profits it realized from the Liquid Cosmetic Products.

103.    Plaintiffs and Class members seek an order of this Court requiring Defendant to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by L'Oréal from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## COUNT VI

### Declaratory and Injunctive Relief

104.    Plaintiffs hereby incorporate by reference the factual allegations contained herein.

105.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the federal and state statutes described in this Complaint.

106.    An actual controversy has arisen.  Plaintiffs allege that Defendant's Liquid Cosmetic Products were and remain defective.  Plaintiffs continue to suffer injury as a result of the defect.

107.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

        a.    L'Oréal owed and continues to owe a legal duty to market and sell its Liquid Cosmetic Products defect-free or, at the very least, to inform consumers of the defect;

        b.    L'Oréal continues to breach this legal duty by failing to employ reasonable measures to prevent defects in its products or inform consumers of the defects.

108.     The Court also should issue corresponding injunctive relief requiring L'Oréal to employ adequate quality control consistent with industry standards to eliminate the defect.

109.     If an injunction is not issued, Plaintiffs and Class members will suffer continual injury, and lack an adequate legal remedy.

110.     The hardship to Plaintiffs and the Class members if an injunction does not issue exceeds the hardship to L'Oréal if an injunction is issued.

111.     Issuance of the requested injunction will not disserve the public interest.  To the contrary, such an injunction would benefit the public by preventing deceptive acts and practices in the market, thus eliminating the additional injuries that would result to Plaintiffs and the millions of consumers who use these products.

## PRAYER FOR RELIEF

**THEREFORE,** Plaintiffs seeks judgment against L'Oréal, as follows:

A.     Certifying the Class and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class members;

B.     Declaring the Defendant's conduct violates the statutes referenced herein;

C.     Finding in favor of Plaintiffs and the Class on all counts asserted herein;

D.     Granting damages, restitution, or disgorgement to Plaintiffs and the Class;

E.     Granting declaratory and injunctive relief to enjoin L'Oréal from engaging in the unlawful practices described in this Complaint;

F.     Granting compensatory damages, the amount of which is to be determined at trial;

1   G.   Granting punitive damages;

2   H.   Granting pre- and post-judgment interest on all amounts awarded;

3   I.   Granting restitution and all other forms of equitable monetary relief;

4   J.   Granting injunctive relief as pleaded or as the Court may deem proper;

5   K.   Awarding Plaintiffs and the Class reasonable attorneys' fees and expenses and costs

6   of suit; and

7   L.   Granting further relief as this Court may deem proper.

8   <u>**JURY TRIAL DEMAND**</u>

9   Plaintiffs demand a trial by jury on all issues so triable.

10

11                              Respectfully submitted,

12   DATED: February 7, 2020        **KAPLAN FOX & KILSHEIMER LLP**

13                              By: <u>/s/ *Laurence D. King*</u>
                                    Laurence D. King

14                              Laurence D. King (SBN 206423)
15                              Matthew B. George (SBN 239322)
                                Mario M. Choi (SBN 243409)
16                              1999 Harrison Street, Suite 1560
                                Oakland, CA 94612
17                              Telephone: 415-772-4700
                                Facsimile: 415-772-4707
18                              *lking@kaplanfox.com*
                                *mgeorge@kaplanfox.com*
19                              *mchoi@kaplanfox.com*

20                              **SNYDER LAW FIRM LLC**
                                Karen E. Snyder (to be admitted *pro hac vice*)
21                              Paul D. Snyder (to be admitted *pro hac vice*)
                                10955 Lowell Ave., Suite 710
22                              Overland Park, KS 66210
                                Telephone: (913) 685-3900
23                              Facsimile: (913) 440-0724
                                *ksnyder@snyderlawfirmllc.com*
24                              *psnyder@snyderlawfirmllc.com*

25

26

27

28

1

**WILLIAMS DIRKS DAMERON LLC**
Matt Dameron (to be admitted *pro hac vice*)

2
Amy R. Jackson (to be admitted *pro hac vice*)
1100 Main Street, Suite 2600

3
Kansas City, MO  64105
Telephone: (816) 945-7110

4
Facsimile: (816) 945-7118
*matt@williamsdirks.com*

5

6
*Counsel for Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT